**Danny RICKS, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 15947.

Missouri Court of Appeals, Southern District, Division One.

July 26, 1989.

David E. Woods, Poplar Bluff, for movant-appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for respondent.

GREENE, Judge.

Movant, Danny Ricks, appeals the denial, after evidentiary hearing, of his motion to vacate his second degree murder conviction and resulting sentence of 45 years' imprisonment. We affirm.

The murder conviction was affirmed on direct appeal. *State v. Ricks*, 642 S.W.2d 375 (Mo.App.1982). That opinion cited the following facts. Johnny Ricks, who was Danny's brother, was the murder victim. Johnny shot Danny's wife, Vickie, in the leg. Danny was not present at the time of the shooting. Shortly thereafter, Johnny was in or near his automobile when he was confronted by Danny. There was evidence that Johnny told Danny the shooting of Vickie was accidental and then raised his

hands. Danny then shot Johnny five times, with two of the bullets entering Johnny's left chest area. Johnny died as a result of the wounds. Danny claimed his actions in shooting Johnny were in self-defense because Johnny was lying on the front seat of his car, reaching for a pistol in the glove compartment when Danny shot him. The jury rejected the defense, and returned a verdict of guilty of second degree murder.

After the conviction was affirmed on appeal, Danny filed a motion to vacate his conviction, which motion, after amendment by court-appointed counsel, alleged, among other things not relevant here since court rulings regarding such issues are not presented here as grounds for appeal, ineffective assistance of trial counsel. He claimed his counsel rendered ineffective assistance in failing to subpoena as witnesses at trial persons who would establish by their testimony that Danny acted in self-defense when he shot his brother. An evidentiary hearing was held at which time Danny introduced the testimony of witnesses in support of his ineffective assistance of counsel claim, the most notable being Terry Loman and Willie Harris.

After the hearing, the motion court made written findings of fact and conclusions of law and entered an order denying the motion to vacate. In regard to the ineffective assistance of trial counsel issue that has been preserved on appeal, the motion court, in its findings, stated:

> Movant states his trial counsel failed to subpoena for a trial certain persons to testify on Movant's behalf, which Movant states that he provided the address of points of contact for his trial attorney, but that his trial attorney failed to contact them. As to these witnesses, the Court finds that their testimony would have been either immaterial or cumulative. Further, the Court finds that Movant failed to show that these witnesses would have aided Movant in his trial or that the failure to call these witnesses resulted in a prejudice to Movant.

In its conclusions, the motion court stated:

> It is the conclusion of this Court that Movant's Motion and evidence adduced contain no facts warranting relief; that all facts alleged by Movant are refuted by the files, records and testimony adduced in this case; in any matters complained of do not result in prejudice to Movant.
>
> The Court, therefore, hereby orders, judges and decrees that Movant's Motion be and is hereby ordered overruled.

In his sole point relied on in his appeal from the order denying relief, the attorney for Danny Ricks contends the trial court erred in finding that the testimony of potential witnesses, who were not subpoenaed by Rick's trial attorney and did not testify at trial, would have been immaterial and cumulative, and further finding that Ricks had failed to show at the evidentiary hearing that those witnesses testimony would have aided Ricks, or that failure of his lawyer to use those witnesses resulted in prejudice to Ricks because:

> [t]he appellant alleged his trial attorney rendered ineffective assistance of counsel for failing to subpoena for trial to testify on behalf of appellant Terry Loman, Willie Harris and Jesse Foreman, because appellant testified that he provided the names and addresses or points of contact for his trial attorney to contact these persons and that their testimony would have provided a viable defense which was Mr. Ricks acted in self-defense, and the appellant was prejudiced thereby because at the appellant's jury trial, Terry Loman, Willie Harris and Jesse Foreman did not testify and because at trial, appellant's trial attorney called Ricky Carter to testify that he heard a shot from outside the house of Danny Ricks on May 20, 1981, and upon hearing the shot he entered into the Ricks' house, saw a pistol laying on the bed and saw Vickie Ricks bleeding, and because the trial attorney called Jo Ann Jackson who testified she was a guest at the Ricks' home on May 20, 1981, and that she saw Johnny Ricks display a gun and the trial attorney called Paul Isom, who said he was Danny Ricks' father-in-law, who testified he saw his daughter, Vickie, was bleeding from a gun shot in her right leg, and at jury trial the appel-

lant testified his brother reached into the glove compartment of his brother's car to get his gun and that the appellant acted in self-defense.

We gather from this that defense counsel is contending that the testimony of Terry Loman, Willie Harris, and Jesse Foreman would have corroborated alleged trial testimony of Danny Ricks that he shot his brother in self-defense.

Since Danny Ricks' sentence of 45 years was pronounced, and his post-conviction motion was filed before January 1, 1988, his claim requesting post-conviction relief is governed by the provisions of Rule 27.26, which was in effect on the date the post-conviction motion was filed. Rule 29.15(m). Our review under that rule is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 27.26(j) (repealed January 1, 1988).

Since the only point of claimed error preserved by Ricks is ineffective assistance of trial counsel, we apply the two-part test set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to see if the facts and law on this issue entitle Ricks to the relief he requests. *Strickland* holds that a movant must not only prove that his lawyer's representation fell below an objective standard of reasonableness, but must also prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial could have been different. Id. 104 S.Ct. at 2066. Our State has reiterated the Strickland test in *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987).

Here, Ricks proved neither. According to the opinion of *State v. Ricks,* which is the only record we have as to what happened at trial, since movant's counsel has not filed the trial transcript or legal file as a part of the record in this case, Danny Ricks testified that Johnny was lying on the front seat of his car while he and Danny were discussing the earlier shooting of Danny's wife by Johnny, at which time Johnny reached for a pistol in the glove compartment after which Danny shot him five times. The jury either did not believe Danny's story, or, if they did, did not believe that he shot his brother in self-defense.

At the evidentiary hearing on the motion to vacate, Danny's trial attorney testified as follows:

Q. Mr. Klemp, you have represented a great number of defendants. Would it be a fair statement that, at least, over a thousand?

A. I don't know, Mike, whether I have or not. I've represented defendants since 1947. I could say that much. But I don't know [how] many.

Q. At least hundreds?

A. Right. I'm sure of that.

Q. And you have tried—Let me rephrase that question. You have represented defendants a great number of times in jury trial?

A. Oh, yes.

Q. When you represented Mr. Ricks, you went out and interviewed witnesses; didn't you?

A. Right.

Q. And you also reviewed the evidence that was in my file?

A. Right.

Q. Any witness that Mr. Ricks told you about, you would have interviewed; is that correct?

A. Yes. Normally, I would go ahead and interview them.

. . . .

Q. Mr. Klemp, if any of these witnesses about which they have talked about had had any favorable testimony, you would have subpoenaed them to the trial; wouldn't you?

A. I sure would.

Q. If any of these things that they've asked you about concerning the jury had occurred, such as, me talking to juror members or them separating, or any of that type of thing, you would have brought that to the attention of the judge and objected [to] it; wouldn't you?

A. I sure would have.

Q. If the Defendant had told you that Roy Cooper was prejudiced against him,

you would have stricken him from the jury panel?

A. I sure would have.

MR. WOODS: Objection, Your Honor. That's speculation.

MR. HAZEL: I don't think it is, Your Honor.

THE COURT: I think—I think this is no more speculation than some of the questions asked him on direct. I'm going to let him answer. You may answer.

BY MR. HAZEL:

Q. If Danny Ricks had asked you to appeal this case, you would have appealed it; wouldn't you?

A. I certainly would.

Q. I know you probably—You may not have records on this with you, Mr. Klemp; but is it a fair statement that you spent many, many hours in preparation for this trial?

A. I expended an exceptional amount of time on this trial because I had an offer to settle this case, on the basis of ten years, from the prosecuting attorney; and I recommended that to him. On many occasions I brought his mother in to discuss it with him in our presence and, also, I brought his wife in.

Q. And he refused that offer of ten years; didn't he?

A. Yes, sir.

. . . .

REDIRECT EXAMINATION BY MR. WOODS:

Q. Mr. Klemp, do you know how many hours you did spend in preparation of this case?

A. Well, the exact number, no; but I know that I did a lot of things after hours to go out and verify some of the locations, the spot where it occurred, made measurements, and find out where the car was located and what side of the car that each participant was located at before and after the shooting, and I talked to Isom, which is his wife's father-in-law—That's his father-in-law. I talked to both of those people. And there's one brother I talked about who was around there that day the shooting occurred; and I talked to a lot of people concerning that.

I talked to a man by the name of Yancey who was engaged in gambling that day with them; and Yancey got left there, and then somebody hit him in the head while he was going down Hall Street and got knocked out; and I asked him if he knew who did that or why that happened. A lot of things I thought might have made a connection involving this case, but it didn't.

I also talked to the younger brother, Danny, on many occasions and talked to his mother about the thing and how she felt about the particular situation. I just spent a lot of time on this case, I know.

Q. Do you recall—Did Mr. Ricks ask you to talk to anybody in particular?

A. Did the Defendant ask me—

Q. Yes, sir.

A. Well, I'm sure that he was agreeable to have me talk to his mother and his brother about this thing.

Q. But, I mean, did he ask you to talk to a particular person or group of persons that you recall?

A. I don't know that. I don't know that; but I know, generally, I knew who was there and found out where they were on that day and what occurred, and I followed it up very carefully all through that particular day.

Danny Ricks testified that he had given his trial attorney the names of Jesse Foreman, Willie Harris, and Terry Loman as potential witnesses and that he had asked his lawyer to contact them. Danny's lawyer did not recall any such conversation. Loman, a thrice convicted felon, testified that he had seen the shooting and that Johnny was reaching for a gun when Danny shot him, and that he would have testified that way if called as a witness. However, on cross-examination, Loman admitted he had been in jail on a burglary charge on the day of the shooting, and had been there for some time previously, and that he had not told the police when they were investigating the shooting that he had seen what happened. Harris testified that he had heard Johnny tell Danny he was going

to kill him shortly before the shooting but that he left the scene and did not know what happened after that. He said that Danny and Johnny were both armed with pistols before he left the scene. Jesse Foreman did not testify at the evidentiary hearing. The motion court was not obligated to believe the testimony of Danny Ricks, Terry Loman, or Willie Harris that was offered at the evidentiary hearing, and evidently did not.

Danny has failed to prove the allegation in his motion to vacate that his trial lawyer's performance fell below the objective standard of reasonableness, and has failed to prove that any deviation from such a standard by his trial lawyer resulted in prejudice to himself. Since this is so, the motion court's finding and conclusion that Danny had failed to show that the testimony of Loman, Harris, and Foreman, if introduced at trial would have aided Danny, or that the failure to call them as witnesses resulted in prejudice to movant.

The findings and conclusions of the motion court are not clearly erroneous. The motion court's order denying relief is affirmed.

HOLSTEIN, C.J., and CROW, P.J., concur.